**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| vs. | ) | No. 2:15-cr-00516-DCN-1 |
| | ) | |
| DAEWON WARREN, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the court on defendant Daewon Warren's ("Warren") motion to vacate, set aside, or correct his federal sentence pursuant to 28 U.S.C. § 2255, ECF No. 247; the United States of America's (the "government") motion to dismiss, ECF No. 260; and the government's motion for summary judgment, ECF No. 299. For the reasons set forth below, the court denies Warren's motion and grants the government's motions.

## I.  BACKGROUND

Warren was indicted on multiple counts, including sex trafficking by force, fraud, or coercion; sexual exploitation of children; and possession of child pornography. On March 2, 2015, Warren was arrested at the Motel 6 at 2551 Ashley Phosphate Road in North Charleston, South Carolina. Prior to his arrest, two officers who had received a tip about a man trafficking an underage girl at the hotel questioned Warren in an open breezeway in front of the Motel 6 office. After Warren responded to questions asking who he was, where he was staying at the hotel, and who he was staying with, one of the officers went to the room where Warren was staying and made contact with A.L., an underage female.

Warren moved to suppress the statements that he made to police officers before his arrest, and the court denied the motion. ECF No. 197. At trial, the government

introduced testimony from an expert on human trafficking and specifically sex trafficking involving children.  The jury ultimately found Warren guilty of all eight counts for which he had been indicted.  The presentence report ("PSR") determined that Warren's total offense level was 43 and placed him in criminal history category I.  ECF No. 216, PSR ¶ 36.  The court adopted the PSR and sentenced Warrant to 360 months' imprisonment and a lifetime term of supervised release.

Warren appealed his convictions and sentence to the United States Court of Appeals for the Fourth Circuit, asserting that this court erred in three respects.  First, Warren argued that the court erred in denying his motion to suppress the statements that he made to the officers at the motel.  Second, Warren argued that the court abused its discretion in qualifying the government's expert as an expert in human trafficking and admitting certain testimony that Warren alleged went beyond the facts of his case.  Third, Warren argued that the court erred in applying a two-level enhancement to his offense level for obstruction of justice under United States Sentencing Guidelines ("U.S.S.G.") § 3C1.1.  On May 17, 2019, the Fourth Circuit affirmed Warren's convictions and sentence.  ECF No. 244; United States v. Warren, 774 F. App'x 778 (4th Cir. 2019) (per curiam).

On August 25, 2020, Warren, proceeding pro se, filed the instant motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255.  ECF No. 247.  On December 14, 2020, the government filed a motion to dismiss the motion to vacate.  ECF No. 260.  Warren filed his first response to the motion on January 20, 2021, ECF No. 265, and a second response on April 30, 2021, ECF No. 271.  Warren, with leave of the court, filed his first supplement in support of his motion to vacate on May 27, 2021.  ECF

No. 272-1.  On October 26, 2021, Warren filed a second supplement in support of his motion to vacate.  ECF No. 278.  Upon order of the court, the government obtained affidavits from Warren's trial and appellate counsel, and on October 17, 2022, the government filed a supplemental response to Warren's § 2255 motion or, in the alternative, a motion for summary judgment.  ECF No. 299.  On December 22, 2022, Warren responded to the government's motion for summary judgment.  ECF No. 306.  As such, the motion to vacate, motion to dismiss, and motion for summary judgment are all ripe for review.

## II.  STANDARD

### A.  28 U.S.C. § 2255 Petition

Pursuant to 28 U.S.C. § 2255(a):

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

The petitioner must prove the grounds for collateral attack by a preponderance of the evidence.[1]  See King v. United States, 2011 WL 3759730, at *2 (D.S.C. Aug. 24, 2011) (citing Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958)).

---

[1] In deciding a § 2255 petition, the court shall grant a hearing, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).  The court has reviewed the record in this case and has determined that a hearing is not necessary.

### B.  Motion for Summary Judgment

If, on a motion to dismiss, the court considers matters outside of the pleadings, such as a party's supporting memoranda and attachments, the court treats the motion as one for summary judgment.  Fed. R. Civ. P. 12(d).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  At the summary judgment stage, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  Because here, the court considers matters outside the pleadings, it treats the government's motion to dismiss and motion for summary judgment as simply one motion for summary judgment.

### C.  Pro Se Litigants

Petitioner is proceeding pro se.  Federal district courts are charged with liberally construing petitions filed by pro se litigants to allow the development of a potentially meritorious case.  See Hughes v. Rowe, 449 U.S. 5, 9–10 (1980).  Pro se petitions are therefore held to a less stringent standard than those drafted by attorneys.  See Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978).  Liberal construction, however, does not mean that a court may ignore a clear failure in the pleading to allege facts that set forth a cognizable claim.  See Weller v. Dep't of Soc. Servs., 901 F.3d 387, 390–91 (4th Cir. 1990).

### III.  DISCUSSION

Warren raises two grounds for relief in his original § 2255 motion.  Ground One of the motion asserts an ineffective assistance of counsel claim based on trial counsel's

failure to call witnesses at trial and failure to file pre-trial motions.  ECF No. 247 at 4.

Ground Two of the motion alleges ineffective assistance of counsel based on trial

counsel's failure to object to evidence and hearsay testimony at trial, as well as appellate

counsel's failure to raise those issues on appeal.  Id. at 5.  In his subsequent responses and

supplemental memoranda, Warren raises several new, additional grounds for relief.  The

government argues that these additional claims raised by Warren after his original § 2255

motion are barred by the one-year statute of limitations.  The court first addresses

Grounds One and Two in Warren's original § 2255 motion.[2]  The court then proceeds to

consider the additional claims raised by Warren.

### A.  Ground One

In Ground One, Warren argues that his trial counsel was deficient for failing to

call any witnesses to refute the testimony of the government's witnesses.  ECF No. 247 at

4.  He also claims that trial counsel "failed to investigate [the] case" and to "file

necessary pre-trial motions in a timely manner."  Id.

The Sixth Amendment guarantees the accused the right to "assistance of counsel

for his defense."  U.S. Const. amend. VI.  The Sixth Amendment "right to counsel is the

right to effective assistance of counsel," and the benchmark for judging any claim of

ineffectiveness must be whether counsel's conduct so undermined the proper functioning

of the adversarial process that the trial cannot be relied on as having produced a just

---

[2] There is no dispute that Warren's original ineffective assistance of counsel
claims are not procedurally defaulted and are properly before the court.  See Massaro v.
United States, 538 U.S. 500, 504 (2003) ("[A]n ineffective-assistance-of-counsel claim
may be brought in a collateral proceeding under § 2255, whether or not the petitioner
could have raised the claim on direct appeal.").

result.  McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970) (emphasis added); see Strickland v. Washington, 466 U.S. 668, 675 (1984).

To prevail on an ineffective assistance claim, the petitioner must satisfy the two-part test established by the United States Supreme Court in Strickland v. Washington. First, the petitioner must show that "counsel's representation fell below an objective standard of reasonableness."  466 U.S. at 688.  "[T]he reasonableness of counsel's challenged conduct" is judged "on the facts of the particular case, viewed as of the time of counsel's conduct."  Id. at 690.  In making the determination of whether counsel's assistance was objectively reasonable, judicial scrutiny of counsel's performance must be highly deferential, and courts "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance."  Id. at 689–90.

To satisfy the second prong of the Strickland test, the petitioner must show that there exists a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 687–88.  The prejudice inquiry focuses on the question of "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair."  Lockhart v. Fretwell, 506 U.S. 364, 372 (1993).  In considering whether petitioner was prejudiced, so long as the petitioner was "represented by counsel whose performance [was] not constitutionally ineffective under the standard established" by Strickland, there is no inequity in requiring him to bear the risk of attorney error.  Murray v. Carrier, 477 U.S. 478, 488 (1986).  In conducting its analysis under Strickland, the court may consider either the performance prong or the prejudice prong first, and it need not address both

prongs if the defendant makes an insufficient showing of either.  Strickland, 466 U.S. at 697.

Warren's original claims about trial counsel's ineffective assistance fail both Strickland prongs.  As the government noted in its motion to dismiss, Warren originally failed to identify any specific witness that should have been called, failed to detail what investigative steps trial counsel should have taken, and did not explain what pre-trial motions should have been filed.  ECF No. 260-1 at 8.  In response to the government's motion to dismiss,[3] Warren argues for the first time that trial counsel should have obtained testimony from the victim, A.L., and Warren's co-defendant, Monique Lewis ("Lewis").  ECF No. 271 at 26.  In his second supplemental brief, Warren argues that trial counsel failed to acquire the following exculpatory evidence: (1) body camera footage from the Motel 6 cameras, (2) evidence that A.L. was later charged for possessing an illegal firearm, and (3) prison records showing that Warren never contacted A.L. or discussed A.L.'s "video recantation" with Lewis.  ECF No. 278 at 23.

Even if the court were to consider these belated arguments, Warren has not shown that trial counsel's failure to call witnesses or discover evidence fell outside the wide range of professional reasonableness.  Warren's trial counsel, Miller Shealy, Jr. ("Shealy") and Justin Kata ("Kata"), both filed affidavits responding to Warren's allegations in the § 2255 motion.  ECF Nos. 299-1, 299-2.  In response to the claim that trial counsel failed to call necessary witnesses, Kata stated that during their discussions,

---

[3] As the court discusses infra, Warren raises entirely new grounds for relief in his subsequent briefs, but he does appear to retain and expound on some of his original arguments as well.  For example, "Claim #3" in his second response to the government's motion to dismiss argues trial counsel failed to call two witnesses, ECF No. 271 at 26, which appears to resemble "Ground One" of his original § 2255 motion.

Warren "never identified a single witness who would come forward and provide exculpatory evidence." ECF No. 299-2, Kata Aff. ¶ 3. After spending "a substantial amount of time" reviewing the evidence, trial counsel was similarly "unable to identify any such witnesses." Id. The court finds these to be reasonable assessments based on the evidentiary record from trial. Furthermore, Warren's contention that counsel should have obtained testimony from either the victim or his co-defendant is simply unfounded. Lewis testified against Warren at trial, and Warren's counsel cross-examined Lewis. ECF No. 229 at 37. As for A.L., trial counsel stated in their affidavits that they were "unaware" why she was unavailable to testify, but Warren himself told counsel that he believed A.L. would not appear at trial. Shealy Aff. ¶ 5; Kata Aff. ¶ 5. Even if trial counsel could have somehow procured A.L.'s appearance, it would have been entirely reasonable to decline calling her based on A.L.'s known testimony to authorities, which was very damaging to Warren. See PSR ¶¶ 14–17. Given Strickland's strong presumption of reasonableness, the court finds that Shealy and Kata's decision not to call these two witnesses did not amount to ineffective assistance.

Warren's argument that trial counsel failed to "file necessary pre-trial motions in a timely manner" similarly lacks merit. ECF No. 247 at 4. In his original petition, Warren failed to specify the pretrial motions that he purports were lacking. See id. Warren later clarified in his response and supplemental briefs that trial counsel should have objected to the introduction of two videos that contained hearsay testimony from the victim, A.L. ECF No. 271 at 2. ECF No. 271 at 2. Warren reiterated the argument in his second supplemental brief, adding that the introduction of the evidence violated Warren's

Sixth Amendment right to confront his accuser.  ECF No. 278 at 7.  The court addresses the two videos in turn.

First, Warren argues trial counsel should have objected to Exhibit 1, which was a video of a traffic stop in which Officer Austin Rissanen ("Officer Rissanen") stopped A.L.  During the traffic stop, A.L. stated that she was seventeen years old, and the statement was used to show A.L.'s underage status at trial.  Since A.L. did not testify, Warren argues that A.L.'s statements in the video are hearsay, and counsel should have further objected because Warren was not presented with the right to confront a witness testifying against him.

Warren's arguments about the propriety of potential objections to the video fail to meet <u>Strickland</u>'s materiality prong.  Trial counsel noted in their affidavits that there was "ample evidence in the record as to [A.L.]'s age," including both hard evidence and lay witness testimony.  <u>E.g.</u>, Shealy Aff. ¶ 5.  This included Exhibit 88, A.L.'s driver license information obtained from the South Carolina Department of Motor Vehicles, which showed that she was seventeen years old during the relevant period.  ECF No. 228 at 129:11–130:10.  In other words, even without the video, the government did and would have elicited testimony about A.L.'s age through other means.  There is no reasonable probability that the outcome of the case would have been different had trial counsel objected to the video.

Warren also argues that trial counsel should have objected to Exhibit 85, which was a video of A.L. taken by Warren's co-defendant, Lewis, while Warren was in prison. In the video, A.L. recanted several statements that she had made to investigators.  At trial, Lewis testified that A.L. was "intimidated" into making the statements and that "Warren

told [Lewis] to make the video."  ECF No. 229 at 66 (Tr. 309:4–5, 16).  As the government notes though, Shealy objected to the video prior to its introduction at trial, arguing it was "rank hearsay."  Id. at 67 (Tr. 310:21–24).  To the extent Warren is arguing that trial counsel should have filed a motion prior to trial to suppress the evidence, the court finds that the materiality prong of Strickland has again not been met.  The court overruled Shealy's objection and would have done the same for any pretrial motion.  A.L.'s statements in the video were not offered for the truth of the matter asserted; they were offered for arguably the exact opposite purpose: the government attempted to show that A.L. had been coerced into make false statements and that Warren was obstructing justice.

Warren's argument is equally unavailing as a Confrontation Clause matter.  The Supreme Court has interpreted the Confrontation Clause as prohibiting the admission of "testimonial" statements from an unavailable declarant.  Crawford v. Washington, 541 U.S. 36, 68 (2004).  Statements are testimonial when "the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."  Davis v. Washington, 547 U.S. 813, 822 (2006).  The "core class" of testimonial statements consists of "ex parte in-court testimony or its functional equivalent," "extrajudicial statements . . . contained in formalized testimonial materials," and "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."  Crawford, 541 U.S. at 51–52.  This places Warren in a bind.  Either he asserts that A.L.'s testimony in Exhibit 85 should be taken at its face value as favorable to him, in which case "no reasonable person . . . would have expected [A.L.'s] statements to be

used" by the government at trial.  <u>United States v. Udeozor</u>, 515 F.3d 260, 270 (4th Cir. 2008).  Or, Warren acknowledges that A.L. was not providing truthful testimony, in which case, the statements were fundamentally non-testimonial.  In either case, trial counsel could not have been expected to object to the introduction of Exhibit 85, particularly as "the Confrontation Clause's focus is relentlessly textual."  <u>Id.</u> at 270.

In short, it cannot be said that trial counsel acted unreasonably with respect to any of alleged failures raised by Warren or that any such failures would have altered the outcome of the case.  Warren is thus not entitled to relief under Ground One.

### B.  Ground Two

Under Ground Two, Warren argues that both trial counsel and appellate counsel rendered ineffective assistance by failing to raise an issue with the sufficiency of the evidence of A.L.'s age.  ECF No. 247 at 5.  As discussed above, Warren's trial counsel determined that the evidence of A.L.'s underage status was overwhelming.  <u>E.g.</u>, Shealy Aff. ¶ 5 ("[T]here is ample evidence in the record as to [A.L.]'s age. [A.L.] was in fact underage at all relevant times during the commission of these offenses.").  Warren's appellate counsel, Louis Lang ("Lang"), likewise stated that once he observed that A.L.'s driver's record had been admitted into evidence as Exhibit 88, he determined that the issue of A.L.'s age was not "meritorious such that it should be raised in Warren's appeal."  ECF No. 299-3, Lang Aff. ¶ 10.  The record more than adequately supports both trial and appellate counsels' conclusions.  <u>See, e.g.</u>, ECF No. 228 at 129:11–130:10 (introducing A.L.'s driver's record, which showed she was seventeen at the time of the offense); <u>id.</u> at 172:23–73:3 (lay witness testimony from K.H., who testified about A.L.'s age based on seeing a driver's license and being told by A.L.); ECF No. 229 at 45 (Tr.

288:6–13, lay witness testimony from Lewis, who testified that A.L. was seventeen and that she communicated that to Warren).  As such, any objection raised by counsel would have been non-meritorious, and failure to raise non-meritorious issues does not constitute ineffective assistance of counsel.  Smith v. Robbins, 528 U.S. 259, 287–88 (2000).  Warren's ineffective assistance of counsel claim under Ground Two is therefore unsupported by the record and is subject to dismissal.

### C.  Additional Claims

Warren raises at least four more claims in his subsequent responses to the government's motion and in his supplemental briefs.  Besides constituting new arguments that were not raised in his original petition, Warren's arguments are either barred by the statute of limitations, procedurally defaulted, or both.  The court first discusses the procedural shortcomings before analyzing the arguments' merits for Warren's benefit.

#### 1.  Statute of Limitations

Section 2255(f) provides a one-year limitations period, which generally runs from "the date on which the judgment of conviction becomes final."  28 U.S.C. § 2255(f)(1).  A judgment is final for purposes of § 2255's one-year statute of limitations "when [the Supreme] Court affirms a conviction on the merits on direct review or denies a petition for writ of certiorari, or when the time for filing a petition expires."  Clay v. United States, 537 U.S. 522, 527 (2003).  The petition for certiorari ordinarily must be filed within ninety days of the Court of Appeal's judgment, calculated from the denial of rehearing.  Sup. Ct. R. 13(1), (3).  Where the § 2255 motion involves a right newly recognized by the Supreme Court that is made retroactively applicable to cases on collateral review, the one-year limitations period begins to run from "the date on which

the right asserted was initially recognized by the Supreme Court." 28 U.S.C.

§ 2255(f)(3).

Here, the Fourth Circuit's judgment became final on June 10, 2019, and the time

to file a petition for certiorari expired on September 11, 2019. ECF No. 245. Thus, the

one-year statute of limitations began to run on that day. Warren filed his motion to

vacate under 28 U.S.C. § 2255 on August 25, 2020.[4] ECF No. 247. The government

agrees that Warren's original motion was timely but contends that every subsequent

response, reply, or supplement raising new arguments was untimely. ECF No. 299 at 12.

The court agrees. Although Warren was certainly permitted to respond to the

government's motion to dismiss and, with leave of the court, to supplement his petition,

any new arguments raised in the subsequent briefs amount to proposed amendments and

are considered futile unless they relate back to the original petition. See United States v.

Pittman, 209 F.3d 314, 316–17 (4th Cir. 2000).

Instead of arguing that his subsequent claims should be permitted because they

relate back to the original petition, Warren argues that the statute of limitations should be

equitably tolled based on the prison conditions during the COVID-19 pandemic. ECF

No. 265 at 1–2. It is true that some courts have applied the doctrine of equitable tolling

to § 2255's statute of limitations under the right circumstances. See United States v.

Terrell, 405 F. App'x 731, 732 (4th Cir. 2010) (applying equitable tolling to the

---

[4] The government argues that the limitations period expired on August 15, 2020, because it used the date that the Fourth Circuit issued its judgment rather than the date of the formal mandate. ECF No. 299 at 12. In any event, Warren appeared to mail his § 2255 motion on August 14, 2020, and the government does not dispute that his original petition is timely. See ECF No. 247-1 (showing that Warren's letter was processed on August 14, 2020).

13

Antiterrorism and Effective Death Penalty Act's statute of limitations).  "[T]o be entitled to equitable tolling, the movant must show (1) that he has diligently pursued his rights and (2) that some extraordinary circumstance prevented the timely filing."  Id. (citing Holland v. Florida, 560 U.S. 631, 649 (2010)).  To decide whether a movant's circumstances justify equitable relief, courts "can and do draw upon decisions made in other similar cases for guidance . . . but with awareness of the fact that specific circumstances . . . could warrant special treatment."  Holland, 560 U.S. at 650.

Here, Warren acknowledges that the statute of limitations expired but argues that he was unable to submit anything more than a "bare bones" petition by the deadline due to the COVID-19 pandemic.  ECF No. 265 at 2–3.  Specifically, Warren asserts that he was "locked down" in his unit starting on March 15, 2020, was only allowed out of his cell three times per week to shower, and was unable to access legal services or assistance. Id.  Certainly, the inability to leave his cell to prepare his motion could, in theory, constitute an extraordinary circumstance that was "external to the party's own conduct." Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000).  The problem for Warren is that the pandemic fails to excuse Warren's failure to prepare his arguments from May 17, 2019 (when his judgment was affirmed) until March 15, 2020 (when Warren asserts that the lockdown began).  To qualify for equitable tolling, a petitioner must "demonstrate that he was reasonably diligent in pursuing his rights throughout the limitations period." Carpenter v. Douma, 840 F.3d 867, 870 (7th Cir. 2016) (emphasis added).  In United States v. Sumter, a defendant sought to equitably toll § 2255(f)'s one-year statute of limitations based on his lack of access to a law library or legal advice during COVID-19-related lockdowns.  2021 WL 3173176, at *6 (D.S.C. July 27, 2021).  The district court

declined to equitably toll the statute of limitations, noting that the clock on the petitioner's Rehaif claim "started ticking" in June 2019, and the petitioner "failed to present any evidence he took even a single step within his control to diligently pursue filing a Rehaif claim during the more than eight months" before the pandemic. Id. at 7 (and collecting cases). Here, Warren has similarly failed to meet his burden of demonstrating his diligence during the entire statute-of-limitations period. Cases like Sumter instead support finding that Warren's subsequent grounds for relief are untimely. The court therefore finds that only Grounds One and Two in Warren's original petition are properly before the court, and the statute of limitations alone bars consideration of Warren's remaining claims.

### 2. Procedural Default

The government also argues that at least one of Warren's claims is barred by procedural default. ECF No. 299 at 15. Because appeal is the "usual and customary method of correcting errors," a collateral attack under § 2255 provides a far more limited opportunity for relief than a direct appeal. United States v. Frady, 456 U.S. 152, 165 (1982). Under the doctrine of procedural default, claims of error that could have been raised on direct appeal, but were not, may not be asserted in collateral proceedings unless a petitioner shows either (1) cause for the default and actual prejudice, or (2) demonstrates that he is actually innocent of the offense. Bousley v. United States, 523 U.S. 614, 621–22 (1998). Failure to establish either prong of this test is fatal to the petitioner's challenge to the procedural bar.

Warren argued for the first time in his first response to the government's motion to dismiss that trial counsel failed to object after the court constructively amended the

jury instructions regarding one of the elements of Count 2. ECF No. 265 ¶ 7. Count 2 of

the superseding indictment alleged, <u>inter alia</u>, that Warren acted "knowingly and in

reckless disregard of the fact" that A.L. had not obtained the age of eighteen. ECF No.

110 ¶ 2. At trial, the court instructed the jury on the following:

> The second way for the government to prove the second element of the crime of sex trafficking is that the defendant knew or recklessly disregarded the fact that [A.L.] had not attained the age of 18 and would be caused to engage in a commercial sex act. <u>If the defendant had a reasonable opportunity to observe the person so recruited, enticed, harbored, transported, provided, obtained or maintained, the government need not prove that he knew or recklessly disregarded the fact that a person had not attained the age of 18</u>.

ECF No. 230 at 74 (Tr. 480:4–13) (emphasis added).

According to Warren, the court constructively amended Count 2 of the indictment

by adding additional language that lowered the level of proof needed to meet the scienter

requirement with respect to the victim's age under 18 U.S.C. § 1591(a)(1). <u>Id.</u> He

reiterated this argument under "Ground #2" of his second response to the motion to

dismiss. ECF No. 271 at 9. In his second supplement, Warren added that the

government erred by failing to include the standard from § 1591(c) under Count 2 in the

superseding indictment. ECF No. 278 at 5.

The government acknowledges that under <u>Massaro</u>, claims of ineffective

assistance of counsel may typically be brought in collateral proceedings under § 2255.

ECF No. 299 at 16 n.3. But the government notes that trial counsel did in fact object to

the jury instructions, and as such, Warren essentially takes issue with the court's ruling

itself. The court agrees that since the underlying issue was preserved and not raised on

direct appeal, the claim is procedurally defaulted.

During the jury charge conference, Warren's counsel specifically noted his objections to the instructions on Count 2.  ECF No. 229 at 148 (Tr. 391:9–23).  Shealy objected to the inclusion of language stating that the government need not prove that Warren knew or recklessly disregarded the fact that the victim had not attained the age of eighteen, arguing that such language "is contrary to the statute" and "lessens the mental state" required.  Id.  Shealy reiterated his belief multiple times that the statute required "knowledge" and that he disagreed with including language about eliminating the requirement if the jury found Warren had a reasonable opportunity to observe A.L.  Id. at 150 (Tr. 394:7–14).  Shealy may not have specifically uttered the words "constructive amendment," but he was essentially making the argument that Warren now raises.  The court overruled the objection.  Since trial counsel raised the issue, he did not render ineffective assistance.

Since Warren cannot assert ineffective assistance of trial counsel, the court agrees that Warren has effectively raised a substantive claim challenging the court's ruling on Shealy's objection.  After the court overruled the objection, the issue could have been raised on direct appeal but was not, meaning the claim was procedurally defaulted.  Like other claims, the failure to raise a constructive amendment claim on direct appeal bars review in a § 2255 proceeding absent a showing of cause and prejudice.  Dowell v. United States, 124 F.3d 203 (7th Cir. 1997) (unpublished table opinion).  Warren does not argue that his failure to raise the argument on direct appeal should be excused or that he was prejudiced.  He does not claim, for instance, that his appellate counsel was ineffective for failing to raise the issue.  Moreover, Warren cannot demonstrate actual prejudice.  Again, the evidence about Warren's knowledge of A.L.'s

17

age was overwhelming.  See discussion supra III.B.  Based on the evidence, the jury would have had ample evidence from which to find that Warren knew or recklessly disregarded A.L.'s age, to the extent they did not make that finding to begin.  There is no indication that the result of the proceedings would have been any different had the court omitted the instruction about § 1591(c), and Warren's procedural default cannot be excused.  In short, those arguments stretching beyond Warren's original petition are improperly before the court.  The court denies Warren's § 2255 motion and grants the government's motion for summary judgment on those bases alone.

### 3.  Merits Review

Finally, for Warren's benefit, the court proceeds to consider the merits of Warren's remaining arguments.  Specifically, the court considers Warrens allegations of a due process violation and various other instances of ineffective assistance of counsel, ultimately finding that each fails to raise a proper ground for relief on the merits.

### a.  Violation of Due Process

Warren argued for the first time in his second response to the government's motion to dismiss—under what he termed "Ground #3"—that the government violated Warren's Fourteenth Amendment's due process clause by (1) knowingly using perjured testimony in violation of Napue v. Illinois, 360 U.S. 264 (1959), and (2) by suppressing exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963).  ECF No. 271 at 16.  Even if the court were to excuse the claims' procedural defects, the court finds that Warren's arguments lack merit.

"[A] meritorious Napue claim requires 'a showing of the falsity and materiality of testimony.'"  United States v. Bush, 944 F.3d 189, 198 (4th Cir. 2019) (quoting Daniels

v. Lee, 316 F.3d 477, 493 (4th Cir. 2003)). Further, the government must have "solicited testimony it knew or should have known to be false or simply allowed such testimony to pass uncorrected." United States v. Kelly, 35 F.3d 929, 933 (4th Cir. 1994). The defendant has the burden of proving both falsity and the government's ill intent. See United States v. Griley, 814 F.2d 967, 971 (4th Cir. 1987) (noting the defendant's "heavy burden" of showing that a witness testified falsely and that the government knowingly used the false testimony).

Warren argues that the government knowingly procured false evidence or testimony, but in each instance, Warren fails to carry his burden of proving both the falsity of testimony and the government's knowledge. First, Warren claims that A.L.'s statement that she was seventeen years old in Exhibit 1, the video of her traffic stop, was false.[5] But as reflected by the discussion supra, Warren's claim that A.L. lied in the traffic stop video is totally contradicted by other evidence, and he has not met the burden of proving that the statement was false.

Second, Warren claims that his co-defendant, Lewis, perjured herself when asked about whether there were any conditions attached to her testimony. Warren refers to the following exchange during Lewis's direct examination:

> Q.    Okay. And what's a plea agreement? What's your understanding
>       of that document?

---

[5] There is some debate about whether there is a Napue violation when a prosecutor presents false evidence, as opposed to subornation of perjured testimony. Prosdocimo v. Secretary, Penn. Dep't of Corr., 458 F. App'x 141, 147 n.7 (3rd Cir. 2012) (collecting cases). At least one court has indicated that "for the purpose of federal habeas review," the rule of law is not so clearly established that a petitioner can clearly establish a due process violation without proof of perjury. Id. Regardless, there is no due process violation here even if the alleged presentment of false evidence, like A.L.'s statement in Exhibit 1, is the proper subject of a Napue claim.

> A.    I pled to 15 years.
>
> [. . .]
>
> Q.    -- of sex trafficking?  And have you been promised anything pursuant to this agreement?
>
> A.    No.
>
> Q.    And what's your understanding of -- I guess why are you here to testify today?
>
> A.    To be released of bond[] really.
>
> Q.    Okay.  And so have you been promised that you'll get any lenient treatment or anything if you testify today?
>
> A.    No.

ECF No. 229 at 39–40 (Tr. 282:14–283:4).  According to Warren, this testimony was patently false because Lewis had her bond revoked and was taken back into custody at the conclusion of her testimony.  ECF No. 271 at 19.  But Warren's conclusion that "it is obvious . . . threats and promises were made by the government to persuade Monique Lewis to provide perjured testimony and false information" is wholly conclusory and unsupported.  ECF No. 271 at 17.  And, even if true, it was unlikely that Lewis's testimony about her motivation for testifying was material to Warren's conviction, i.e., that the result of the trial would have been different had she stated she was motivated to testify.  See United States v. Brinson, 2020 WL 6947393, at *3 n.3 (E.D.N.C. Nov. 25, 2020) (noting that the materiality standard under Napue is essentially identical to the analysis under Brady, which requires showing a reasonable probability that the result of the trial would have been different).  No Napue violation can be inferred here.

Third, Warren claims Lewis committed perjury by stating that Warren asked her to record the video of A.L. recanting her prior statements to the police, and this testimony was the "only evidence" used to convict Warren of Count 8 for obstruction.  Id. at 19–20.

20

This argument is similarly empty and unsupported by either the record or any other evidence. Warren's own trial counsel affirmed that he was "unaware of any perjured testimony used by the government in [Warren's] trial. ECF No. 299-4, Shealy Supp. Aff. ¶ 2.

Finally, Warren asserts that the government failed to disclose a transcript of the traffic-stop video to Warren in violation of Brady. This assertion is directly contradicted by Warren's trial counsel, and Warren offers no other support for the fact that he did not receive the evidence. Id. ("[T]he video referred to by [Warren]—dealing with a traffic stop—was made known to me in discovery prior to trial. It was shared with [Warren] along with other voluminous discovery in this case."). Simply put, Warren's arguments about due process violations in this case are non-meritorious.

### b. Ineffective Assistance for Failing to Raise Suppression Issue

Warren argued for the first time in his first supplemental brief—under what he claimed was "Ground #4"—that his appellate counsel erred by failing "to raise issues about the suppression hearing" on direct appeal. ECF No. 272-1 at 2.

Prior to trial, Warren moved to suppress the statements that he made to officers at the motel. This court denied the motion, finding that the officers were not required to provide Warren with Miranda warnings before questioning him because the questioning did not amount to a custodial interrogation within the meaning of Miranda v. Arizona, 384 U.S. 436 (1966). ECF No. 197 at 3. Warren claims that his appellate counsel "disregarded" his request to raise an issue with the suppression hearing on direct appeal. Warren is mistaken. Appellate counsel raised this precise issue on appeal, and the Fourth Circuit affirmed the court's judgment. ECF No. 244; Warren, 774 F. App'x at 781 ("We

21

conclude that Warren was not subjected to a custodial interrogation that necessitated advisement of his Fifth Amendment rights prior to questioning.").  Warren likely fashioned his argument as an ineffective assistance of counsel claim to evade a procedural default.  But after briefly stating that appellate counsel rendered ineffective assistance, the remainder of Warren's supplemental brief contends that the encounter at the motel was in fact a custodial interrogation—suggesting Warren's true intent was to relitigate the underlying issue.  Because that issue was raised and considered on direct appeal, however, the court cannot reconsider it in Warren's § 2255 motion.  See Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976) (holding that a petitioner "will not be allowed to recast, under guise of a collateral attack, questions fully considered" and decided on direct appeal).  The court therefore denies this ground for relief.

### c.  Ineffective Assistance for Failing to Properly Advise Warren on Testifying

Warren argued for the first time in his second supplemental brief that trial counsel rendered ineffective assistance by failing to properly advise Warren about testifying at the suppression hearing and at trial.  ECF No. 278 at 22.  Warren claims that if he had been allowed to testify at the suppression hearing, he would have been able to show that he was in custody before he was asked about where he was staying at the motel.  He adds that if he had been permitted to testify at trial, he would have been able to testify about his knowledge of A.L.'s age, which went "unchallenged at trial." Id.  In both instances, Warren alleges that trial counsel was ineffective for advising Warren not to testify.

A criminal defendant has a fundamental constitutional right to testify on his or her own behalf at trial.  United States v. Midgett, 342 F.3d 321, 325 (4th Cir. 2003).  "A

defendant's waiver of this right, like that of any other constitutional right, is 'personal' and must be made voluntarily and knowingly." United States v. Rashaad, 249 F. App'x 972, 973 (4th Cir. 2007) (per curiam) (citing Sexton v. French, 163 F.3d 874, 881 (4th Cir. 1998)).  In accordance with Strickland, "to prove ineffective assistance of counsel based on his claim that his attorney prevented him from exercising his right to testify . . . , [a petitioner] must show both that his attorney violated his right to testify and that his testimony had a 'reasonable probability' of changing the outcome." Id. (citing Strickland, 466 U.S. at 694).

Trial counsel stated that that he "discussed the possibility of [Warren] testifying at great length," and Warren "never asserted at any time that he wished to testify." Shealy Aff. ¶ 6.[6]  Trial counsel also believed that testifying at either the suppression hearing or trial would be against Warren's interests for a number or reasons, which they communicated to Warren. Id.  Namely, trial counsel weighed the potential consequences of Warren testifying at the suppression hearing, including the fact that the government would cross examine Warren, that "he could face perjury charges," and that the motion to suppress was unlikely to be granted anyways. Id.  Prior to trial, counsel again informed Warren that "the decision to testify or not was solely up to [him]." Id.  Trial counsel advised Warren not to testify at trial because he had no persuasive defense, would open

---

[6] The court held a hearing on Warren's motion to suppress just before trial, on October 18, 2017.  ECF No. 227 at 11–32.  To the extent Warren is arguing that trial counsel was ineffective for filing the motion to suppress just the prior evening, the court finds that although that was certainly not a prudent decision—something this court noted at the time, id. at 4—Warren was not ultimately prejudiced because the motion would not have been successful regardless of when it was filed, as reflected by both this court's order and the Fourth Circuit's affirming opinion.

himself up to additional inculpatory evidence and questioning, and would be subject to potential perjury.  Id.

These choices are precisely the type of decisions that courts must hesitate to second guess with the "distorting effects of hindsight."  Strickland, 466 U.S. at 689. Indeed, a counsel's advice not to testify is paradigmatic of "the type of tactical decision" that will almost always withstand an ineffective assistance of counsel claim.  Hutchins v. Garrison, 724 F.2d 1425, 1436 (4th Cir. 1983) (citing Marzullo v. Maryland, 561 F.2d 540, 544–45 (4th Cir. 1977)); see also Carter v. Lee, 283 F.3d 240, 249 (4th Cir. 2002) (quoting Reyes-Vejerano v. United States, 117 F. Supp. 2d 103, 108–09 (D.P.R. 2000)) ("Absent evidence of coercion, legal advice concerning the defendant's right to testify does not constitute [ineffective assistance].").  Here, there is no evidence at all that trial counsel coerced Warren into not testifying.  By all accounts, trial counsel advised Warren not to testify, and such advice was not unreasonable in light of the record evidence.  To the extent Warren properly raises an ineffective assistance of counsel claim regarding this issue, the court denies the claim.

### d. Ineffective Assistance for Failing to Move for Sequestration

Finally, Warren argued for the first time in his second supplemental brief that trial counsel was ineffective for failing to request sequestration of witnesses under Federal Rule of Evidence 615.  ECF No. 278 at 24.  Warren claims that Detective Benton and Agent Caines were permitted to remain in the courtroom throughout the proceedings, and this allowed them to "collaborate[] on statements" regarding the encounter with Warren at the motel and A.L.'s interview statements during the investigation.  Id. at 24–25.  This argument, again, is time-barred.  Furthermore, Warren has not shown that trial counsel's

decision against asking for sequestration fell outside the wide range of reasonable professional assistance.

Warren's trial counsel stated that he had discussed sequestration with the Assistant United States Attorneys prior to trial, and they agreed that no witnesses, except for the primary case agents, would be in the courtroom outside of their testimony.  Shealy Supp. Aff. ¶ 3.  This is consistent with Warren's argument, as Warren only objects to Detective Benton and Agent Caines's presence in the courtroom.  With regards to those two agents, Shealy explained that both agents were intimately involved in the preparation for trial.  Id.  Both agents "provided discovery" for "months and weeks" before trial, so it was highly unlikely that any testimony at trial would alter or shade their own testimony.  Id.  Based on those considerations, trial counsel's decision did not fall outside the wide range of professional assistance.  Even if it did, Warren has not demonstrated that the deficient performance prejudiced the defendant.  Shealy states that the agents—as well as the remainder of the witnesses—all testified in a manner that was consistent with Shealy's expectations, and there was no indication that their testimony was "shaded, motivated, altered, or exaggerated" in any way.  Id.

Besides Grounds One and Two, Warren's claims of substantive errors are procedurally barred from a review under § 2255.  Even if the court disregarded those considerations, Warren has not demonstrated the merits of his claims, and therefore, the court dismisses his motion in its entirety.

### D.  Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2255 proceedings provides that the district court "must issue or deny a certificate of appealability when it enters a final order

adverse to the applicant."  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  An applicant satisfies this standard by establishing that reasonable jurists would find that the district court's assessment of the constitutional claims is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable.  Miller-El v. Cockrell, 537 U.S. 322, 336–38 (2003).  Warren does not meet this standard because there is nothing debatable about the court's resolution of his § 2255 petition.  Accordingly, the court will deny a certificate of appealability.

### III.   CONCLUSION

For the reasons set forth above, the court **DENIES** Warren's motion to vacate and **GRANTS** the government's motion for summary judgment.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**June 13, 2023**
**Charleston, South Carolina**